**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re <br><br> **JOSHUA N. HARRINGTON and** <br> **LELA M. HARRINGTON**, <br><br> Debtors. | Case No. **2:19-bk-61081-BPH** |

**MEMORANDUM OF DECISION**

## I.        Introduction.

In this chapter 13 bankruptcy,[1] Debtors filed an application for approval of professional fees incurred by their attorney in excess of $20,000. The amount subject to approval is three times greater than the presumed reasonable fee allowed under the local rules. This Court previously approved and awarded Debtors' counsel's fees and costs in the amount of $14,250. For the reasons stated below, this Court denies approval of the additional fees in the amount of $6,704.26. However, the additional costs in the amount of $119.97 are approved.

## II.        Procedural Background.

Debtors filed a "First Application for Professional Fees and Costs" on March 29, 2022, for Ralph Wilkerson, Attorney for Debtors ("Applicant").[2] This Court approved Applicant's fees in the amount of $13,620.74 and costs in the amount of $629.26, totaling $14,250 on April 25, 2022.[3]

Debtors filed a "Second Application for Professional Fees and Costs" on February 23, 2024.[4] The Application requests an additional award of fees in the amount of $6,704.26 and reimbursement for costs in the amount of $119.97. If the Application is approved, Applicant would, in sum, receive fees in the amount of $20,325 and reimbursement for costs in the amount of $749.23 ($21,074.23 in total) for his work on Debtors' bankruptcy case.

Pursuant to Mont. LBR 2002-4 and 9013-1, a "Notice" attached to the Application

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] ECF No. 84 ("First Application").

[3] ECF No. 87.

[4] ECF No. 106 ("Application").

1

explains that the time to respond or object to the Application and schedule the matter for a hearing is twenty-one (21) days. The time to respond or object has passed. No objections were filed.

## III. Factual Background.

Debtors filed their chapter 13 bankruptcy petition on October 26, 2019. Debtors filed their first Plan on that same date.[5] Debtors subsequently filed two Amended Plans in an effort to resolve objections by the Trustee and creditor RoundPoint Mortgage Servicing Corporation.[6] The Second Amended Plan was unopposed and confirmed.[7] Debtors subsequently filed three Modified Plans.[8] None were contested, and modification was approved in each instance without hearing.[9]

Additionally, Debtors resolved a Motion to Dismiss and two Motions to Modify Stay.[10] The matters were resolved by the parties. No hearings on the matters occurred. Debtors filed two Motions for Sale of Real Property pursuant to § 363(b).[11] The Orders approving the Motions for Sale indicated that the requested relief was unnecessary.[12] However, this Court recognized Debtors requested an Order to satisfy conditions of closing imposed by the title company issuing the title policy associated with the transaction.[13]

Other issues typically found in a standard chapter 13 case occurred. Debtors filed a Stipulation to Waive Wage Withholding.[14] Debtors amended Schedules I and J twice.[15] Debtors filed two Proofs of Claim on behalf of secured creditor Reliant Federal Credit Union after it failed

---

[5] ECF No. 10.

[6] ECF Nos. 19 and 28. ECF No. 28 is the "Second Amended Plan."

[7] ECF No. 31.

[8] ECF Nos. 42, 90, and 101.

[9] ECF Nos. 48, 93, and 104.

[10] ECF Nos. 39, 50, and 68.

[11] ECF Nos. 64 and 72 (collectively, "Motions for Sale").

[12] ECF No. 66 and 81. ("The Court remains steadfast in its conclusion that neither § 363(b) nor any other Code section requires a Court order approving the sale of the Property, under the circumstances in this case.").

[13] *Id.*

[14] ECF No. 44. The Stipulation was approved at ECF No. 45.

[15] ECF Nos. 61 and 99.

2

to do so.[16] Debtors filed a Notice of Change of Address.[17] The Application indicates that Debtors' mailing matrix is larger than that of the typical chapter 13 case, necessitating more time and expense related to noticing plans, orders, and other pleadings.

No contested hearings took place in Debtors' case. No adversary cases were opened. Over the course of this case, Applicant participated in two hearings. The first hearing was on confirmation of Debtors' plan and lasted under two minutes.[18] The second hearing was approximately thirty minutes long. At that hearing, this Court questioned the necessity of Debtors' Motion for Sale.[19]

Applicant's billing records indicate Applicant's hourly rate is $250.[20] Applicant is a solo practitioner and does not employ a paralegal. As a result, Applicant handles all duties associated with Debtors' case. For example, Applicant provides those services typical of a bankruptcy practitioner, such as drafting a modified plan.[21] Applicant also manages responsibilities associated with a paralegal or legal assistant, such as converting certain filings to PDFs.[22] All services are billed at the same $250 rate.

Additionally, Applicant's Disclosure of Compensation reveals that Applicant agreed to accept $4,000 for "all aspects of the bankruptcy case," including a set of defined legal services.[23] The defined legal services included:

    a.    Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

    b.    Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

    c.    Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof; and,

    d.    Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of

---

[16] Claim Nos. 42-1 and 43-1 on the Proof of Claim Register.

[17] ECF No. 83.

[18] ECF No. 23

[19] ECF No. 79.

[20] Application, Ex. A.

[21] *Id.*, p. 6.

[22] *Id.*, p. 4.

[23] ECF No. 1, p. 67.

3

liens on household goods.[24]

The Disclosure of Compensation further states that, by agreement with Debtors, the above-disclosed fee does not include representation of Debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.[25] It does not disclose an hourly rate for work done by Applicant that is not included under the umbrella of services outlined in the agreement.

Notably, Debtors' latest Modified Plan indicates that Applicant's total fees and costs to be paid through the Modified Plan total $12,470.[26] The Modified Plan indicates that if the fees and costs differ from "the Disclosure of Compensation originally filed by Debtor(s) attorney, said Disclosure must be amended simultaneously with the filing of this Plan" as provided for in Rule 2016(b). Applicant did not file an amended Disclosure of Compensation.

After this Court approved $14,250 in total fees and costs, Debtors amended Schedules I and J, filed a Motion to Modify Plan and the Application. The Modified Plan was approved with the Trustee's consent and without objection. During the period between approval of $14,250 in fees and costs and this Application, Applicant spent time investigating and resolving a delinquency in plan payments caused by an employer withholding Plan payments from wages but failing to forward funds to the Trustee.

## IV. Applicable Law & Analysis.

Increasingly, this Court is being asked to review and approve fees in chapter 13 cases that are two to three times its "no look" fee. Although the "no look" fee is $6,000, fee applications seeking approval of $12,000 – $18,000 are no longer the rare exception. Scrutiny of this Application has caused this Court to revisit the fees previously approved in this case and examine reasonable fees awarded in other chapter 13 cases. This approach highlights different practices employed among chapter 13 debtor counsel, along with significant disparities in fee awards approved by this Court. Fee awards ranging from $4,500 to more than $20,000 have been approved as reasonable. Increasingly, reconciling reasonableness with the difference in awards has become difficult and challenging. This difficulty may be attributable to this Court's willingness to approve higher fees as reasonable incrementally over time, without sufficiently scrutinizing nuances and distinctions in cases. Rather than permit the incremental increase in "reasonable" awards to continue unabated, revisiting the applicable standards and surveying prior fee awards offers renewed guidance on reasonable debtor's counsel fees in chapter 13 cases in this district.

### A. § 330(a).

Chapter 13 debtor's attorneys are awarded fees under § 330(a)(4)(B). *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 602 (9th Cir. 2006). The court may allow reasonable compensation to the debtor's attorney based on a consideration of the benefit and necessity of services to the debtor and other factors set forth under § 330(a)(3). § 330(a)(4)(B). A court determines reasonable compensation utilizing factors that include:

---

[24] *Id.*

[25] *Id.*

[26] ECF No. 101. This amount is the amount approved in the first Application, less the retainer paid by Debtors. The remaining $12,470 is paid through Debtors' Modified Plan.

4

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3). The bankruptcy court has sua sponte authority to award compensation that is less than the amount of compensation that is requested. *In re Eliapo*, 468 F.3d at 597.

To date this Court has exercised this authority sparingly. Underlying this Court's reluctance to exercise this power has been its overarching belief that debtor's counsel honestly record their time, and the services provided to debtors are beneficial and necessary. If, however, this Court's failure to exercise this power has contributed to the incremental increase in fees to the point that $12,000 to $18,000 for a routine chapter 13 case is arguably reasonable, it must reconsider its approach and award less than the amount requested.

**B.** **"No Look" Fees.**

While a court is typically required to review compensation for chapter 13 debtors' counsel, bankruptcy courts have the power to establish a presumptive reasonable value for legal fees in consumer bankruptcies. *Id.* at 599. Accordingly, many jurisdictions, including this one, allow chapter 13 counsel to take a so-called "no look" flat fee. In essence, "the no-look flat fee serves as base compensation for the set of chapter 13 legal services that are routinely performed in most cases, though time and effort required to perform those services may vary depending on the relative complexity of the case." *In re Spurlock*, 642 B.R. 269, 281 (Bankr. S.D. Ohio 2022). The maximum flat fee amount may be changed by the court from time to time. *Id.* In exchange for taking the no-look fee, counsel does not need to seek court approval of their fees, and a court need not scrutinize applications if the fees are presumed reasonable.

The *Eliapo* court identified four separate reasons why the use of a presumptive, "no look" fee process may be beneficial: (1) it saves time attorneys otherwise would spend on preparing fee applications and thereby might lower the amount of fees charged; (2) it awards attorney efficiency and prevents inefficient attorneys from running up costs that are passed on to clients; (3) it provides for earlier payment of fees by allowing compensation for anticipated services that might not yet have been performed; and (4) it saves court time that might be spent on reviewing detailed fee applications. *In re McDonough*, 2007 Bankr. 5123, at *4-5 (Bankr. D. Nev. 2007) (citing *In re Eliapo*, 468 F.3d at 599).

The flat fee is presumptively reasonable but not mandatory. Counsel may choose an

5

alternative arrangement, such as an hourly rate, with the understanding that any fees incurred, particularly those exceeding the presumed reasonable flat rate, will require this Court's approval. A bankruptcy court may decline to award additional fees above the presumed reasonable fee if it concludes that "the problems necessitating this work [are] typical problems encountered in a chapter 13 case . . ." *In re Eliapo*, 468 F.3d at 601.

Awarding additional fees in excess of a presumed reasonable fee requires this Court to define "typical" problems, and only award fees in excess of the "no look" fee when the problems encountered are atypical. While it is easy to conclude that defending an adversary proceeding is likely atypical, defining "typical" for other tasks is more nuanced. For example, in many chapter 13 cases, confirmed plans are modified. However, defining whether one to two plan modifications is typical while four to five modifications are atypical is less clear. As a result, Local Rules and Forms have been adopted that govern "no look" fees and define the services covered by the fee.

### C.      Local Rules & Forms.

#### 1.      Mont. LBR 2016-1(b).

In Montana, chapter 13 debtor's counsel may receive compensation at a presumed reasonable flat rate of up to $6,000 in fees and $750 in costs in representing chapter 13 debtors, for a combined presumptive reasonable fee of $6,750. Mont. LBR 2016-1(b). This Court recently increased this combined "no look" fee from $4,750.[27]

To take a "no look" fee, debtors' counsel must use the standard form of Attorney Retention Agreement set forth in Mont. LBF 3-A and disclose the terms of compensation pursuant to Rule 2016(b). *Id.* An attorney receiving presumptive compensation under Mont. LBR 2016-1(b) may seek additional fees through an application for allowance of additional compensation and, if necessary, a motion to modify a confirmed plan. *Id.*

#### 2.      Mont. LBR 2014-2(b).

Mont. LBR 2014-2(b) requires that "[a]ll debtor's attorneys in chapter 13 cases shall use the standard Attorney Retention Agreement set forth in Mont. LBF 3-A if they wish to have the presumption of reasonableness of their fees as described in Mont. LBR 2016-1(b)." LBF 3-A tasks debtors and their counsel with various responsibilities. For counsel, these responsibilities include:

(1) Timely respond to objections to plan confirmation and, where necessary, prepare, file, and serve an amended plan.

(2) Timely prepare, file, and serve any necessary amended statements and schedules and any change of address, in accordance with information provided by the debtor.

(3) Prepare, file, and serve timely modifications to the plan after confirmation, when necessary, including modifications to suspend, lower, or increase plan payments.

(4) Prepare, file, and serve necessary motions to buy or sell property and to incur debt.

---

[27] This change in the local rules was implement December 21, 2022. A survey of other jurisdictions reveals that Montana's "no look" fee is one of the most generous throughout the country.

(5) Evaluate claims which are filed and, where appropriate, object to filed claims.

(6) Timely respond to the trustee's motion to dismiss the case, such as for payment default, or unfeasibility, and to motions to increase the payments into the plan.

(7) Timely respond to motions for relief from stay or valuation of property.

(8) Provide any other legal services necessary for the administration of this case before the Bankruptcy Court, and to ensure the debtor receives a discharge.

In return for these defined services, LBF 3-A states that the attorney will be paid a fee not to exceed $6,000 and receive reimbursement for the payment of costs in an amount not to exceed $750.

In essence, the "no look" fee establishes $6,000 is presumptively reasonable compensation for completion of the defined services outlined in LBF 3-A. If these services are provided for $6,000, an application for approval is not necessary because the fixed fee is presumed reasonable. If counsel agree to provide the defined services for $6,000, a future decision to convert to an hourly rate and request additional compensation must be scrutinized by this Court. Along with considering §§ 330(a)(3) and (4), counsel's explanation for the transition the hourly fee must justify the decision, the client must be informed,[28] the services being performed must be outside the defined services included in LBF 3-A, and the disclosure of compensation must be amended.

### D.     Rule 2016(b) and § 329.

Every attorney must file a disclosure of compensation within 14 days after the petition date. Rule 2016(b). This disclosure of compensation must be consistent with the requirements of § 329. *Id.* The disclosure of compensation must indicate the compensation paid or agreed to be paid by a debtor to counsel for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation. § 329. It is "often advisable for a consumer debtor's attorney to spell out in the disclosure exactly which services are covered by the basic fee being paid to the attorney, which services are not covered and an hourly rate for the latter category of services." 9 Collier on Bankruptcy ¶ 2016.18 (16th ed. 2024). If debtor's counsel anticipates that total attorney fees may exceed the presumed reasonable fee, they should set forth their hourly rate for services rendered beyond the no-look fee in their Rule 2016 disclosure. Mont. LBR 2016-1 (cmt).

Additionally, Mont. LBR 9009-1 requires that a debtor's chapter 13 plan conform with Mont. LBF 19. Mont. LBF 19 states that if debtor's counsel requests fees and costs that differ from "the Disclosure of Compensation originally filed by the Debtor'(s) attorney, said Disclosure must

---

[28] Mont. R. Prof. Conduct 1.5(b):

> The scope of the representation, any changes in the scope, and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. <u>Any changes in the basis or rate of the fee or expenses shall also be communicated in writing</u>. This paragraph does not apply in any matter in which it is reasonably foreseeable that total cost to a client, including attorney fees, will be $500 or less.

7

be amended simultaneously with the filing of this Plan or Amended Plan, as provided in [Rule] 2016(b)." Mont. LBR 9009-1 corresponds to the language in Rule 2016(b) that states:

> A supplemental statement shall be filed and transmitted to the United States Trustee within 14 days after any payment or agreement not previously disclosed.

Disclosure requirements are especially important in chapter 13 cases because this Court typically has little or no opportunity in such cases to formally consider attorney employment. *Frutkin Law Firm, PLC v. Brown (In re Smith)*, 2014 Bankr. LEXIS 755, at *11 (B.A.P. 9th Cir. 2014) (affirming bankruptcy court's discretion to deny fees above the flat rate because counsel did not disclose hourly rate in Rule 2016 disclosure). Referencing an altered fee arrangement in other documents, such as the plan or fee applications does not relieve counsel of the duty to file an amended disclosure. *Id.* Instead, post-petition agreements between a debtor and counsel that alter the amount or manner of compensation must be timely disclosed by filing a supplemental disclosure of compensation.

Consideration of these issues has caused this Court to examine no less than ten different disclosures filed by nine different chapter 13 practitioners. In some cases, Form 2030 has been amended to explicitly indicate a flat rate or "no look" fee of $6,000. In another case, a practitioner disclosed that the chapter 13 case was being handled on an hourly basis. Finally, in many cases, it appears the practitioner agreed to an amount close to or equal to the "no look" fee at the time the case was filed, but also disclosed an hourly rate for services that the practitioner describes as not included in the "above-disclosed" fees. For example, under paragraph 6 of Form 2030, many practitioners explicitly exclude adversary proceedings.

Overall, it is difficult for this Court to discern the extent to which practitioners' description of services on Form 2030 is consistent with or deviates from the described services on LBF 3-A when a "no look" fee agreement is entered, or the circumstances under which a practitioner will elect to apply for approval of fees incurred on an hourly basis, despite initially disclosing a "no look" fee. It appears there are circumstances under which counsel may agree to a "no look" fee, but later request approval of fees for services that are otherwise included under LBF 3-A.[29]

### E. Scrutiny of past fee applications in chapter 13 cases supports the following observations that inform this Court's application of the standards under § 330(a)(3), and its conclusions regarding reasonableness under § 330(a)(4).

Close examination of prior fee applications in chapter 13 cases highlights different factors that might explain the disparity in fees incurred by chapter 13 practitioners in Montana. This district takes the "market approach" to hourly rates. *In re Jore Corp.*, 20 Mont. B.R. 158 (Bankr. D. Mont. 2003). Under the market approach, hourly rates charged by practitioners are not uniform. *Id.*

A survey of Montana chapter 13 practitioners reveals that their hourly rates range from $225 to $375. This Court has previously explained that as practitioners charge a higher hourly rate, there is a corresponding expectation that the practitioner will delegate tasks to timekeepers with lower hourly rates when possible and exhibit a high degree of efficiency. *In re Olsen*, 2020 Mont. B.R. 143 (Bankr. D. Mont. 2020).

---

[29] Historically, the chapter 13 trustee objected to confirmation of a plan if it included a "no look" fee for debtor's counsel despite counsel's failure to file LBF 3-A as required by Mont. 2016-1. *See, e.g., In re Dodd*, 2:16-bk-61017-BPH, at ECF No. 19.

The chapter 13 debtors' bar in Montana is small and can be roughly divided into two separate groups: those who employ a paralegal or legal assistant and those who are solo practitioners. In the former group, paralegals typically handle the administrative tasks associated with a chapter 13 case at a lower hourly rate than that of a practitioner. In the latter group, the solo practitioner is responsible for all aspects of a debtor's case.

A review of approved fee applications shows that when counsel employ paralegals or legal assistants, these timekeepers are responsible for 60-80% of the time incurred and billed, while the remainder is attributable to timekeepers billing at a higher hourly rate. Hourly rates for paralegals and legal assistants range from $110 to $175, roughly $150 to $200 below that of counsel. In general, paralegals or legal assistants are tasked with routine matters, such as copying and scanning documents received from a debtor. Conversely, solo practitioners, like Applicant, must complete all tasks associated with a chapter 13 case.

At least one practitioner has adopted a hybrid approach where, depending on the type of work being done, the practitioner charged a different hourly rate. For example, the practitioner charged a "Paralegal rate" for some of his work, explaining that he applied "a discounted rate used for tasks that are performed by an attorney but do not require attorney skill or attention. These are tasks that could typically be performed by a paralegal at the paralegal rate." Conversely, counsel charged his full hourly rate for those matters that required a bankruptcy practitioner's experience and skill.

Practitioners, solo or otherwise, must exercise their judgment as to what fees and costs are appropriate to pass on to the debtor. If counsels' fees exceed the presumed reasonable rate, this Court will not indulge requests for fees at counsels' hourly rate for simple tasks – charging an hourly rate of $250 to convert a document to PDF is unreasonable. Often, such tasks are written off. If counsel submit time entries that charge a practitioner's hourly rate for these mundane tasks, this Court may reduce the amount awarded or deny compensation for the tasks in their entirety. Alternatively, counsel may consider billing administrative tasks that they perform at a lower hourly rate comparable to that of a non-practitioner.

### F.    Compliance with the Code, applicable Rules and Forms is not discretionary.

This Court expects compliance with all applicable rules and forms.[30] Failure to comply, particularly with disclosure requirements, may result in the denial of requested fees. *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997) (summarizing that bankruptcy court has broad discretion in denying fees as a sanction for non-disclosure). Accordingly, any compensation in a chapter 13 plan that differs from that in counsels' initial Disclosure of Compensation requires counsel to file an amended Disclosure of Compensation simultaneously with the plan. Further, any services excluded from a "no look" fee agreement must be clearly delineated and the hourly rate the professional will charge for those services must be clearly disclosed. Absent these disclosures at the beginning of the case, and amendments as required later in the case, practitioners may inadvertently violate Rule 2016 or Mont. R. Prof. Conduct 1.5(b).

Amending the Rule 2016 disclosure statement if the initial fee arrangement is altered is mandatory. Notably, Rule 2016(b) requires that counsel disclose any payment or agreement not

---

[30] To the extent a local rule or form no longer serves its purpose, could be improved or updated, it is incumbent upon the members of the bar and local rules committee to formulate proposed changes for consideration by this Court.

previously disclosed. This requires counsel to amend their disclosure statement if they choose to change their billing arrangement from a flat rate to an hourly rate, regardless of whether this Court has yet approved any fees. A hybrid fee arrangement that contemplates a "no look" fee for defined services, and hourly fees for other excluded services is permissible. However, any application for approval of fees incurred must, at a minimum, demonstrate to the court that the services were initially excluded from the "no look" fee and the necessity of the fees later incurred. The penalties can be harsh if counsel fails to do so, including denial and disgorgement of all fees in excess of what was contemplated in the initial disclosure. In his initial Rule 2016 disclosure, Applicant indicated that he had agreed to accept $4,000 for legal services in connection or contemplation of Debtors' case.[31] No hourly rate was disclosed. Applicant's Second Amended Plan and first Modified Plan both indicate that Applicant's fees would not exceed $4,000, thus no amended Rule 2016 disclosure was needed at those times. However, Applicant's First Application requested fees exceeding $13,000 and Applicant now requests an additional $6,700 in fees. Nothing in this Court's docket indicates Applicant filed an amended Rule 2016 disclosure, as required by the federal and local rules, and the Modified Plan.

This Court recognizes that where there has been no objection to a debtor's counsel's fee application it has likely failed to scrutinize whether the fee application is consistent with the fee agreement between a debtor and counsel initially disclosed or strictly enforce the necessity of an amended Rule 2016 disclosure. Given this recognition, imposing a harsh penalty on counsel here strikes this Court as unfair. However, future applications will be scrutinized, and penalties imposed for failing to comply.

### G. No additional fees are reasonable because Debtors' case is consistent with a standard Chapter 13 case.

Those duties outlined under LBF 3-A provide a guidepost and ceiling for what this Court will approve as reasonable for services that are routinely performed in most cases, even though time and effort required to perform those services may vary depending on the relative complexity of the case. Unless compelling circumstances exist otherwise, this Court will not approve fees in excess of the "no look" fee for time spent performing the defined legal services and ancillary tasks associated with those services, such as filing a Notice of Change of Address, filing a modified plan or amending a debtor's schedules.

If debtor's counsel's fees exceed the presumed reasonable fee under Mont. LBR 2016-1(b), this Court expects that circumstances exist that would warrant an increased award. These circumstances include initiating or defending an adversary proceeding for debtor's benefit, litigating a complex contested matter, such as a motion for valuation, or navigating some unforeseen difficulty in a debtor's case, such as a divorce. Certainly, this list is not exclusive. This Court acknowledges that the problems encountered in a case are not always easily characterized as typical or atypical.

In this case, the services provided by counsel in this case mirror the services outlined in LBF 3-A. Applicant filed two amended Plans, work contemplated by LBF 3-A, section II.B.7. Applicant filed three Modified Plans. *Id.* at II.B.10. Applicant resolved a Motion to Dismiss. *Id.* at II.B.13. Applicant responded to two Motions to Modify Stay. *Id.* at II.B.14. Applicant filed two Motions to Sell Property. *Id.* at II.B.11. Applicant amended Schedules I and J twice. *Id.* at II.B.8. Applicant filed two Proofs of Claim on behalf of a secured creditor. *Id.* at II.B.12. Applicant filed a

---

[31] This Court's no-look fee was $4,000.00 at the time of Applicant's initial Rule 2016 disclosure.

Notice of Change of Address. *Id.* at II.B.8. In short, nearly all of Applicant's efforts fall within the ambit of LBF 3-A.

For this work, the Application requests $21,074.23 in total fees and costs. Although this Court previously approved approximately $13,000 in fees, and the amount subject to consideration here is the difference between the two amounts, this Application has caused this Court to scrutinize the prior award more closely. Fees that exceed the presumptively reasonable "no look" fee of $6,000 by a multiple of two or three must involve issues not ordinarily encountered in a "routine" chapter 13 case. A comparison of this case with prior cases shows such issues are not present in this case.

In *In re Teig*, this Court approved fees in the amount of $20,215.[32] As the Application for Compensation in that case explains:

> The Debtors initiated an adversary proceeding with the Internal Revenue Service on a preference claim arising from the filing of a federal tax lien. While the analysis for judgment liens is straightforward under the Code, courts have analyzed federal tax liens differently. This analysis, as well as negotiating with the IRS, has taken additional time. The IRS claim, per the Stipulation, was also bifurcated, which required additional time and analysis. The Debtors also divorced in the midst of these proceedings. As a result, Counsel worked with the Debtors to resolve which of the Debtors was retaining specific property. In addition to that, one of the Debtors is a wage-earner while the other is self-employed. This was an additional layer of complexity.[33]

The circumstances in *Teig*, particularly the litigation and negotiation required in resolving its associated adversary proceeding, provided the necessary grounds for this Court to approve a fee application roughly three times the amount of the presumed reasonable fee.

Similarly, in *In re Jergesen*, this Court approved fees in the amount of $14,500.[34] In *Jergesen*, counsel for the debtor initiated an adversary proceeding seeking the partition and sale of real property. After negotiations with defendants, counsel for the debtor secured a settlement. Given the complexity of the issues involved, this Court ultimately approved his fee application. Counsel's recognition and willingness to reduce the fees subject to application and approval by $5,000 contributed to this Court's conclusion the fees being requested were reasonable.

Court approval of fees exceeding the "no look" fee is not limited to those incurred in the context of an adversary proceeding. In *In re Wormington*, counsel for the debtors engaged in litigation involving a valuation dispute and motion to modify stay, resulting in a contested hearing and extensive negotiation with counsel for the creditor.[35] As a result, this Court approved fees in the amount of $11,000.[36]

---

[32] 2023 Mont. B.R. 180 (Bankr. D. Mont. 2023), ECF Nos. 64 and 71.

[33] *Id.*, ECF No. 64.

[34] 9:21-bk-90211-BPH, ECF Nos. 104 and 107.

[35] 9:23-bk-90052-BPH, ECF Nos. 58 and 79.

[36] *Id.*, ECF Nos. 103 and 107.

11

Scrutiny of the docket in Debtors' case reveals no contested hearings were held and no adversary proceedings were filed in this case, and Debtors' filings were largely unopposed. Applicant has not discounted or written off any time associated with his work on Debtors' case. While this Court does not doubt the veracity of Applicant's time entries and trusts that he incurred the time reflected in the billing statements, it cannot conclude approval of any additional fees would be reasonable. Indeed, this Court considered revisiting its prior approval of $13,620.74, but ultimately concluded that it would not do so.

## V.       Conclusion.

Empirical evidence shows that chapter 13 cases are far more likely to succeed when debtors are represented by counsel. *In re Moukazis*, 479 B.R. 247, 253 (Bankr. E.D.N.Y 2012). Accordingly, the significance of Applicant's representation of debtors in a geographic area that is underserved cannot be overstated. Further, Applicant is entitled to reasonable fees for these services. Although this Court is not persuaded that fees in excess of $20,000 in this case are reasonable, this does not in any way diminish the importance of the services Applicant provides to debtors. Despite the significant and important service Applicant provides, where defined services presumptively cost $6,000, permitting counsel to receive $12,000 to $18,000 for providing essentially the same services calls into question the integrity and fairness of this Court's analysis of reasonableness. Under these circumstances, this Court must exercise its authority and award less fees than requested. An Order will be entered separately.

Dated June 7, 2024.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

12